## HERST v. NIELSEN.
### Patent Appeal No. 2863.

Court of Customs and Patent Appeals.
Feb. 1, 1932.

Gifford & Scull, of New York City (Chas. S. Grindle, of Washington, D. C., of counsel), for appellant.

B. G. Foster, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference was declared in the United States Patent Office on February 24, 1928, between a patent No. 1,649,228, issued to the appellant, Edward Herst, on November 15, 1927, upon an application filed April 1, 1927, and a pending divisional application of the appellee, Karl K. Nielsen, serial No. 245,312, filed January 9, 1928. Nielsen's parent application, which discloses the invention here in issue, was filed January 28, 1927.

The subject-matter involved in the interference is an electric candle socket, adjustable as to length, by means of two slidably interfitting yoke-shaped members, fas-

tened at any position by tightening a single screw associated with a strut member between the two yoke-shaped members. The issue of the interference was defined in three counts, but it will not be necessary, for the purposes of this opinion, to quote them here.

The sole and only question is one of originality. Nielsen's parent application having been filed before that of Herst, the burden is upon Herst of establishing his case, and, unless this burden is fully discharged, the senior applicant must prevail. Hunter v. Stikeman, 13 App. D. C. 214. This burden is not changed by the fact that patent may have issued to the junior applicant. Hunt v. McCaslin, 10 App. D. C. 527. It is also greatly increased by the concurring decisions of the Patent Office tribunals. Turnbull v. Curtis, 27 App. D. C. 567.

From the record it appears that in August, 1925, the appellant, then known as Edward Herskovitz, was vice president of a company known as the Peerless Light Company, with its principal place of business at Chicago, Ill. An uncle of appellant, William Herskovitz, was president of the company. This company was engaged in selling electric candle sockets, which were at and before that time, made with slidable adjustable yoke-members, fastened with two screws. These were manufactured for the Peerless Company by the Alcor Manufacturing Company, also of Chicago, of which the appellee, Karl K. Nielsen, was then manager.

A letter, dated August 20, 1925, was received by the appellant's company from its correspondent Peerless Light Company, of San Francisco, making certain complaints against the candle sockets theretofore sold by the San Francisco company and furnished by the appellant's company. These were sockets manufactured by the Alcor Company. This letter was produced by appellee while testifying and is in the record. He states that it was brought to him by an employee of appellant's company, Irving B. Eppenstein, after its receipt, with the request that the Alcor Company remedy the defects complained of in the letter. The letter is as follows:

"Quite a number of complaints have come in recently regarding the construction of our No. 3819 Candle Socket, most important of which are as follows:

"(1)—The binding screw is at the bottom instead of the top, making it impossible to adjust when in the cup.

"(2)—The contacts are mounted on too light material, bending easily when pressure is put on the binding screws and can be shorted across.

"(3)—Due to the location of contacts shorts can readily happen.

"(4)—Threads in base of socket are very poor, having received reports from the trade that it makes it necessary to retap about 50% of the sockets.

"Is it not possible for Alcor to make the necessary changes?"

Nielsen testified that Eppenstein brought no sample with him at that time; that he thereupon proceeded to attempt to remedy the defects complained of, and, in his study, conceived the idea of a single screw adjustment; that he thereupon made a sample, by hand, showing this construction. The witnesses Hansen, Haumann, Schmidt, and Kluk, employees at that time of the Alcor Company, amply corroborate Nielsen as to the making of this sample and the disclosure of its principles. Nielsen testifies that he thereupon took the sample to the appellant personally, and that the same was then approved by the appellant, and an order was issued by the Peerless Company to the Alcor Company to change its dies to manufacture this new model of socket. The shop order to change these dies is in evidence and is dated September 28, 1925. It is significant that, in the formal letter written by the appellant to appellee, directing the Alcor Company to change these dies, and which is dated September 18, 1925, this statement is made: "We are writing this letter to authorize you to proceed with the necessary dies for the changing of our No. 3819 candlestick *in accordance with the sample submitted.*" (Italics ours.)

Under the evidence, we are satisfied that the sample here referred to was a sample submitted by Nielsen.

Between the time these changes were ordered and January, 1926, the Alcor Company continued to furnish to the Peerless Company the old style sockets, but in January began to furnish the new style, and this was continued until the Peerless Company, by reason of financial difficulties, was forced to discontinue operations.

On the other hand, Herst testified that he conceived the ideas embodied in this new socket in August, 1925, and disclosed them to others in the company. An employee of the Peerless Company, Richard Otto, testi-

fied that appellant told him to make up a sample socket in July, 1925, and that he did so at that time. William Herst, formerly William Herskovitz, president of the Peerless Company, testified that appellant showed him a sample socket incorporating the new ideas, in July or August, 1925.

Ben Henshel, a traveling salesman for the Peerless Company, testified that he saw the appellant working at a socket at his desk some time in the summer of 1925, which appellant showed to him, and which embodied the features of the invention in issue. The witness Eppenstein also testified that Herst showed him, some time in July, 1925, a model of the invention in issue, *made of brass,* and that he (Eppenstein) took this with him when he went to see Nielsen.

On this record, both tribunals in the Patent Office found priority of invention in Nielsen. We would not be justified in reversing this finding unless we felt that the weight of the testimony was plainly contrary to such a finding. This we are unable to find.

The evidence on the part of Herst is not satisfactory nor of that convincing nature which carries conviction of its verity. Herst himself would not make a sworn preliminary statement in the interference, and testified only after service of subpœna. He was uncertain as to his facts, and dates, and did not testify that he made a model of his invention. He stated that he made his invention after he changed his name to Herst, which appears to have been in 1926. Certainly originality of this invention may not be predicated upon this sort of evidence.

His witnesses also are uncertain, and, in many instances, inconsistent in their statements of facts. They are supported by no documentary or other exhibits. The sample which they say was made by the appellant is not produced, nor is any satisfactory reason given for its nonproduction. After considering the whole of Herst's record, one falls short of being convinced that he was the first inventor of this device.

On the other hand, Nielsen's testimony is amply corroborated by oral testimony and by documentary exhibits, and seems to bear upon its face the indicia of truthfulness. Upon the whole record we are convinced the tribunals of the Patent Office did not err in their conclusions.

The decision of the Board of Appeals is affirmed.

Affirmed.